**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONNECTICUT CHILDREN'S MEDICAL CENTER *et al.*,<br>        *Plaintiffs*,<br><br>        v.<br><br>CONTINENTAL CASUALTY CO. *et al.*,<br>        *Defendants*. | No. 3:21-cv-291 (JAM) |

**ORDER GRANTING MOTION TO DISMISS**

This case is one of many filed nationwide that seek property insurance coverage for business losses occasioned by the onset of the COVID-19 pandemic. The plaintiffs here are a children's hospital and a medical practice group. They have continued to provide healthcare services during the pandemic but the pandemic has prompted them to suspend elective procedures and other non-essential healthcare services, as well as to engage in general mitigation measures. They seek coverage for their losses under their property insurance policy.

The primary issue before me is whether the plaintiffs have suffered a "direct physical loss or damage" to property that is covered under the policy. Although I do not doubt that the COVID-19 pandemic has proved costly to the plaintiffs, I conclude that they have not alleged facts to plausibly show a "direct physical loss or damage" to their property. Accordingly, I will grant the defendants' motion to dismiss the complaint.

BACKGROUND

The following facts are alleged in the complaint and are accepted as true only for the purposes of this ruling. The plaintiffs are a children's hospital and medical group practice based in Hartford, Connecticut.[1] The defendants issued the plaintiffs a property insurance policy.[2]

---

[1] Doc. #1 at 3 (¶¶ 8–9).
[2] *Id.* at 4, 5 (¶¶ 10–12, 16–20).

1

The plaintiffs seek coverage under the policy for business losses they have sustained due to the COVID-19 pandemic. According to the complaint, "[i]n March 2020, Plaintiffs were forced to suspend or reduce operations at their children's hospital due to direct physical loss of or damage to covered property as a result of the Coronavirus and the Pandemic and the ensuing orders issued by authorities in the State of Connecticut, the CDC and guidance from medical associations and societies."[3]

The complaint further alleges that "[t]he imminent threat of SARS-CoV-2 particles on physical property impairs value, usefulness and/or normal function," that "[t]he imminent threat of SARS-CoV-2 particles causes direct physical harm, direct physical damage, and direct physical loss to property," and that "[t]he Plaintiffs' covered property remains at imminent risk of contamination with SARS-CoV-2 and it has suffered direct physical loss of or damage to the property."[4]

The plaintiffs allege that they have cleaned, sterilized, and reconfigured their property in order to mitigate damages posed by the presence of the coronavirus and to minimize the suspension of their operations.[5] Notwithstanding these mitigation efforts, they allege that "[l]oss of use of property due to the presence of SARS-CoV-2 or the imminent risk of the presence of SARS-CoV-2 constitutes direct physical loss of or damage to property for purposes of first-party property insurance."[6]

The plaintiffs' insurance policy provides as a general matter that "[e]xcept as hereinafter excluded and subject to the limits of liability in Section 1.4 and all other policy provisions, this policy insures against risks of direct physical loss of or damage to property and/or interest

---

[3] *Id.* at 3 (¶ 5)
[4] *Id.* at 8 (¶¶ 34–36).
[5] *Id.* at 9 (¶ 41).
[6] *Id.* at 13 (¶ 58).

described herein at covered Locations."[7] According to the plaintiffs, their claim is covered under three different provisions of the policy: for Business Interruption, for Extra Expense, and for Disease Contamination.

The Business Interruption provision of the policy states in relevant part: "This policy covers against loss resulting from necessary interruption of business caused by direct physical loss of or damage to covered property … by the perils insured against and occurring during the term of this policy at covered Locations occupied by the Insured, subject to the sublimit specified in section 1.4 of this policy."[8]

The "Extra Expense" provision of the policy states in relevant part: "The Company will pay for the reasonable and necessary extra expense, hereinafter defined, incurred by the Insured in order to continue as nearly practicable the normal operation of the Insured's business following direct physical loss of or damage to covered property by peril(s) insured against."[9]

The "Disease Contamination" provision of the policy allows coverage for certain costs sustained "as a result of an evacuation and decontamination order at a location by the National Center for Disease Control, authorized public health official or governmental authority because of the discovery or suspicion of a communicable disease or the threat of the spread of a communicable disease."[10]

The complaint alleges three counts for declaratory relief, for breach of contract, and for breach of the implied covenant of good faith and fair dealing.[11] The defendants move to dismiss

---

[7] *Id.* at 6 (¶ 22). For the sake of readability, my quotations from the relevant insurance policy provisions are normalized to admit certain words that appear in all capital letters and that are underlined; these typeface conventions appear to have no significance to this case.
[8] *Ibid.* (¶ 24).
[9] *Id.* at 6–7 (¶ 25).
[10] *Id.* at 7 (¶ 26).
[11] *Id.* at 15–19 (¶¶ 66–87).

on the ground that the policy does not cover the losses that the plaintiffs claim.[12]

<div align="center">

DISCUSSION

</div>

When considering a motion to dismiss under Rule 12(b)(6), a court must first accept as true all factual matters alleged in the complaint and draw all reasonable inferences for the plaintiff. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). But apart from any conclusory recitations, a complaint must allege enough facts to state plausible grounds for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although this plausibility requirement is not a probability requirement, it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Ibid.*[13]

The parties agree that Connecticut law governs this case. Under Connecticut law, a court interprets the terms of an insurance policy as it would a contract. If the terms of the policy are clear and unambiguous, then the language of the policy must be enforced in accordance with its natural and ordinary meaning. On the other hand, if the terms of the policy are ambiguous, the policy must be construed in favor of the insured. *See Karas v. Liberty Ins. Corp.*, 335 Conn. 62, 73–74 (2019); *R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indem. Co.*, 333 Conn. 343, 364–65 (2019).

The Connecticut Supreme Court has yet to interpret the specific policy provisions at issue in this case. Absent a decision from a State's highest court on a question of state law, a federal court's role is to carefully predict how the highest court of the State would rule on the issue presented. *See Haar v. Nationwide Mut. Fire Ins. Co.*, 918 F.3d 231, 233 (2d Cir. 2019). In doing

---

[12] Doc. #20. The plaintiffs have cross-moved for summary judgment (Doc. #24) but acknowledged at oral argument that their summary judgment motion involves the same legal arguments that serve as the basis for the motion to dismiss. Doc. #38 at 13. Moreover, even if I were to consider the agreed factual record (Doc. #28-9) that the parties have developed in connection with the plaintiffs' summary judgment motion, I would reach the same conclusion that dismissal is warranted as a matter of law.

[13] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

<div align="center">

4

</div>

so, the federal court should give proper regard to the relevant rulings of the State's lower courts and may also consider decisions from other jurisdictions on the same or analogous issues. *See In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).

As noted above, the plaintiffs claim coverage under three different provisions of the policy: for Business Interruption, for Extra Expense, and for Disease Contamination. I will address the first two before considering the third.

### The "Business Interruption" and "Extra Expense" provisions

Both the Business Interruption and Extra Expense provisions of the policy only cover losses "caused by direct physical loss of or damage to covered property."[14] Unfortunately, the policy does not further define the term "direct physical loss or damage." Therefore, I start by considering the common and ordinary meaning of the individual words that appear in this term:

- The word "direct" is an adjective that means something that happens as an immediate consequence of something else. *See, e.g.*, Black's Law Dictionary (11th ed. 2019) (defining "direct" in part to mean "1. (Of a thing) straight; undeviating <a direct line> … 3. Free from extraneous influence; immediate <direct injury>"); *see also Estes v. Cincinnati Ins. Co.*, -- F.4th --, 2022 WL 108606, at *3 (6th Cir. 2022) (same; citing Merriam-Webster's Collegiate Dictionary 353 (11th ed. 2014)).

- The word "physical" means something that is or relates to a tangible object. *See* Black's Law Dictionary (11th ed. 2019) (defining "physical" in part to mean "2. Of, relating to, or involving material things; pertaining to real, tangible objects <the physical world around us>"); *see also Estes*, 2022 WL 108606, at *4 (same). A "'physical loss' refers to a deprivation caused by a tangible or concrete change in or to the thing that is lost." *Chief of Staff LLC v. Hiscox Ins. Co. Inc.*, 532 F. Supp. 3d 598, 601–02 (N.D. Ill. 2021) (applying Connecticut law).

- The word "loss" generally means "1. An undesirable outcome of a risk; the disappearance or diminution of value, usu. in an unexpected or relatively

---

14 Doc. #1 at 6–7 (¶¶ 24–25).

unpredictable way." Black's Law Dictionary (11th ed. 2019) ("loss"); *England v. Amica Mut. Ins. Co.*, 2017 WL 3996394, at *7 (D. Conn. 2017) (same).

- The word "damage" means some form of injury to a person or property, especially physical injury. Black's Law Dictionary (11th ed. 2019) (defining "damage" in part as "1. Loss or injury to person or property; esp., physical harm that is done to something or to part of someone's body"); *DeMoura v. Cont'l Cas. Co.*, 523 F. Supp. 3d 314, 322 (E.D.N.Y. 2021) (same).

Moreover, although the two words "direct physical" appear immediately in front of the word "loss" and not immediately in front of the word "damage" in the term "direct physical loss or damage," I agree with the Seventh Circuit that "[t]he words 'direct physical' are most sensibly read as modifying both 'loss' and 'damage.'" *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 332 (7th Cir. 2021).

Against this vocabulary backdrop, I understand the plaintiffs to advance two different theories to show that there has been a "direct physical loss or damage" as the policy requires. I will consider each theory in turn.

### *Loss of use*

The plaintiffs' first theory is that their loss of *use* of their property (whether by reason of the COVID-19 pandemic or resulting governmental orders) constitutes a "direct physical loss or damage" to the property. This theory rests on an expansive and counterintuitive interpretation of the words "direct physical loss" to mean a loss of use of physical property. It relies on the following reasoning: (1) that the word "loss" appears in the disjunctive with the word "damage" in the term "direct physical loss *or* damage," such that the word "loss" must mean something different from "damage," lest the policy language be redundant, and (2) that the separate word "damage" most naturally refers to a physical alteration to property, such that the additional word "loss" must refer to something else like deprivation of the use of one's property. *See, e.g.*, *Studio*

*417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 801 (W.D. Mo. 2020).

Multiple courts have convincingly rejected this theory because the terms "loss" and "damage" are *not* redundant and have readily different meanings. "[T]he word 'loss' may refer to complete destruction while 'damage' connotes lesser harm that may be repaired." *Sandy Point Dental,* 20 F.4th at 332. Thus, "[t]here is no need to read 'physical loss' to include a deprivation of some particular use of a property in order to give the phrase independent meaning," because "[t]hat possibility could occur whenever a policy holder is deprived of property without any damage to it, say a portable grill or a delivery truck stolen without a scratch." *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, 15 F.4th 398, 404 (6th Cir. 2021); *see also Chief of Staff LLC*, 532 F. Supp. 3d at 602 (citing examples of how one may have a "loss" of property without "damage" and vice versa).

Because the terms "loss" and "damage" are not redundant, there is no reason to adopt an extravagant interpretation of the term "direct physical loss" to mean a functional "loss of use" of one's property. Moreover, to do so would commit the same sin that the plaintiffs seek to avoid, this time by making the word "physical" superfluous, because interpreting the term "physical loss" to mean merely a "loss of use" of property would ignore the baseline requirement that the loss be "physical" to begin with. *See Sandy Point Dental*, 20 F.4th at 332; *Estes*, 2022 WL 108606, at *4.

Applying New York law, the Second Circuit has also recently rejected a plaintiff's "loss of use" theory involving very similar policy language. In *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 2021 WL 6109961 (2d Cir. 2021), the Second Circuit considered an insurance claim by an art gallery for business loss-of-use stemming from the COVID-19 pandemic. The policy at issue was limited to "direct physical loss," and the Second Circuit relied

7

on New York state appellate court authority interpreting a policy allowing coverage for "all risks of direct physical loss or damage to the [insured's] property," and in which "the Appellate Division held that the provision 'clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage.'" 2021 WL 6109961, at *2 (quoting *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 8 (N.Y. App. Div. 1st Dept. 2002)). The Second Circuit thus held that "under New York law the terms 'direct physical loss' and 'physical damage' in the Business Income and Extra Expense provisions do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property." *Id.* at *4; *see also Estes*, 2022 WL 108606, at *4 (rejecting "loss of use" theory for COVID-19 property insurance claim and citing cases to show that a "broad circuit consensus also supports our interpretation" under the law of many States).

Although my task is to predict how the Connecticut Supreme Court would decide the issue, I am persuaded by these federal appeals court decisions as well as those district court rulings that have applied Connecticut law to similarly reject the "loss of use" theory of coverage. *See Chief of Staff LLC*, 532 F. Supp. 3d at 601–02; *Farmington Vill. Dental Assocs., LLC v. Cincinnati Ins. Co.*, 2021 WL 3036902, at *10 (D. Conn. 2021).

### *Property damage*

The plaintiffs' second theory is that the COVID-19 virus itself has a physical manifestation that causes a "direct physical loss or damage" to their property. The plaintiffs argue that "SARS-CoV-2 is a physical substance" that "can be spread through droplets of different sizes which can be deposited on surfaces or objects" and that "[i]f a person ill with COVID-19 enters a building, that building is physically altered and damaged by the direct,

physical presence of the virus, whether on surfaces or in the air."[15]

Many courts have rejected this "COVID-19 causes physical damage" theory of coverage. For example, in *Cosmetic Laser, Inc. v. Twin City Fire Ins. Co.*, -- F. Supp. 3d --, 2021 WL 3569110 (D. Conn. 2021), Chief Judge Underhill reasoned that the policy terms "direct physical loss or physical damage" required some form of physical or structural alteration to the policyholder's property in the form of a perceptible harm and with observable, tangible effects. *Id.* at *13. "The presence of fleeting, microscopic entities does not amount to significant structural change," and "'[i]f, for example, a sick person walked into one of Plaintiffs' restaurants and left behind COVID-19 particulates on a countertop, it would strain credulity to say that the countertop was damaged or physically altered as a result.'" *Id.* at *14 (quoting *Unmasked Mgmt., Inc. v. Century-National Ins. Co.*, 514 F. Supp. 3d 1217, 1226 (S.D. Cal. 2021)). The fact that virus particles infiltrate and linger in the air and on interior surfaces in a manner that is not permanent and that could be sanitized with ordinary household cleaner did not amount to "physical loss or physical damage" to the property. *Ibid.*

Similarly, the Eleventh Circuit has recently ruled that "[t]he district court correctly explained that 'direct physical loss or damage requires an actual physical change to property that COVID-19 particles cannot cause' because a contaminated location can be immediately restored to its previous state by cleaning and disinfecting—no repair or replacement required." *Ascent Hosp. Mgmt. Co., LLC v. Emps. Ins. Co. of Wausau*, 2022 WL 130722, at *3 (11th Cir. 2022) (*per curiam*); *see also Olmsted Medical Center v. Continental Cas. Co.*, 2022 WL 126336, at *7 (D. Minn. 2022) (describing how the COVID-19 virus hurts people and not structures); *Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.*, 2021 WL 1091711, at *4

---

[15] Doc. #26 at 4.

(E.D.N.Y. 2021) (noting that "[t]hough the virus has the potential to cause significant harm to people, the court is not aware of any scenario in which its presence can cause 'physical damage' to property such as a building, or other inanimate objects"); *Sharde Harvey, DDS, PLLC v. Sentinel Ins Co., Ltd.*, 2021 WL 1034259, at *9 (S.D.N.Y. 2021) (collecting cases and rejecting the notion that the virus constitutes "direct physical loss" because "the virus's presence can be eliminated by 'routine cleaning and disinfecting,' and 'an item or structure that merely needs to be cleaned has not suffered' a direct physical loss").

I am persuaded by these rulings, especially in light of the Connecticut Supreme Court's decision in *Capstone Building Corp. v. American Motorists Ins. Co.*, 308 Conn. 760 (2013), in which the court considered whether an insurance policy covered losses due to elevated levels of carbon monoxide found in student housing at UConn. *Id.* at 767–68. The policy there covered "property damage," which was defined in relevant part to include "[p]hysical injury to tangible property, including all resulting loss of use of that property." *Id.* at 776–77 & n.18. The court held that "the escape of carbon monoxide, without more, is not property damage," in part because "the gas 'caused no physical, tangible alteration to any property.'" *Id.* at 782–83 (quoting *Concord Gen. Mut. Ins. Co. v. Green & Co. Bldg. & Dev. Corp.*, 160 N.H. 690, 694 (2010)).

Although the *Capstone* decision involved different policy language than the language at issue in this case, it tends if anything to support the defendants here because it interprets the term "property damage" to require no less than a physical and tangible alteration to the property. The plaintiffs allege that here only in conclusory terms. To the extent that they allege that COVID-19 virus particles "damage" the air inside their property, their claim is no stronger than the one rejected for carbon dioxide in *Capstone*. To the extent that they allege that COVID-19 virus

particles affix themselves temporarily to interior portions of their physical property, they do not explain how it is plausible to conclude that this amounts to "damage" to the property. Indeed, the plaintiffs are medical providers whose role is to treat sick people (including patients with COVID-19), not to file property "damage" claims every time a sick person coughs, sneezes, or otherwise respirates or expectorates at their premises.

In short, whether the theory is based on "loss of use" of property or based on "physical damage" from the COVID-19 virus itself, the result is the same: there is no "direct physical loss or damage" to property. The plaintiffs cite contrary authority (and there is much of it), but it is not persuasive and does not involve Connecticut law.[16] I am persuaded that, if the Connecticut Supreme Court were to decide this issue, it would likely rule that there is no "direct physical loss of or damage to covered property" within the unambiguous meaning of the Business Interruption and Extra Expense policy provisions at issue in this case.

### *Disease contamination coverage*

The "Disease Contamination" provision of the policy allows coverage for certain costs sustained "as a result of an evacuation or decontamination order at a location by the National Center for Disease Control, authorized public health official or governmental authority because of the discovery or suspicion of a communicable disease or the threat of the spread of a communicable disease."[17] The plaintiffs invoke this provision due to the various governmental orders issued by Governor Lamont and the CDC that have gone into effect in response to the pandemic.[18]

---

[16] *See* Doc. #26 at 12, 15–21; *see also New Castle Hotels, LLC v. Zurich Am. Ins. Co.*, 2021 WL 4478669, at *2–4 (Conn. Super. Ct. 2021) (not cited by the plaintiffs but declining to apply federal "plausibility" pleading standard and concluding that it is premature at the motion to dismiss stage to decide if the coronavirus causes direct physical loss of or direct physical damage to property).

[17] Doc. #1 at 7 (¶ 26).

[18] *Id.* at 18 (¶ 82).

But the problem is that the plaintiffs do not cite any particular order that *required* them to evacuate or decontaminate any of their locations. Rather than complaining that any of the orders has required them to altogether evacuate their facilities, the plaintiffs are upset that the pandemic has led them to modify their healthcare business by suspending elective procedures and non-essential care.[19] Similarly, although the plaintiffs allege that they have undertaken sanitization and other mitigation measures, they do not identify the terms of any orders that *required* them to decontaminate their facilities (and thus that constitute a "decontamination order").[20]

Nor do the plaintiffs even allege any order that has been directed to any of their specific locations ("at a location") rather than orders that are applicable generally to homes and businesses throughout the State of Connecticut. *See Green Beginnings, LLC v. West Bend Ins. Co.*, 2021 WL 2210116, at *7 (E.D. Wis. 2021) (noting that "[t]he policy requires that the shutdown or suspension of operations must be due to an outbreak 'at the insured premises'" and that the "language clearly requires that the plaintiff plead more than just that there was an outbreak in the region generally"). Thus, for multiple reasons, the plaintiffs have not alleged facts to plausibly establish grounds for relief under the Disease Contamination provision of the policy.

All in all, the complaint does not allege plausible grounds for relief to support the plaintiffs' claims for a declaratory judgment or for breach of the insurance contract. And in the absence of any underlying breach of contract claim, the plaintiffs have no claim for breach of the implied covenant of good faith and fair dealing. *See Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 116 (D. Conn. 2014). Accordingly, I will grant the defendants' motion to dismiss the

---

[19] *Id.* at 9 (¶ 39). The complaint elsewhere alleges: "Plaintiffs treat patients with COVID-19 and their employees have tested positive for COVID-19." *Id.* at 10 (¶ 44).
[20] *Id.* at 9 (¶ 41).

complaint.

### Conclusion

For the reasons set forth above, the Court GRANTS the defendants' motion to dismiss (Doc. #20). In light of the Court's order dismissing the complaint, the Court DENIES as moot the plaintiffs' motion for summary judgment (Doc. #24). Because it appears that granting leave to amend would be futile and because the plaintiffs have not asked for leave to amend, this order of dismissal is with prejudice (absent a further motion to reopen and for leave to amend). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 19th day of January 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

13